UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>JUAN CHAVEZ-BENITEZ,<br><br>　　　　　　Defendant. | 4:18-cr-40058-KES<br><br>ORDER DENYING MOTION FOR RELIEF UNDER THE FIRST STEP ACT |

　　　Defendant, Juan Chavez-Benitez, filed a *pro se* motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 117. Plaintiff, the United States of America, opposes the motion. Docket 119. Chavez-Benitez replied to the government's opposition to his motion. Docket 120. For the following reasons, Chavez-Benitez's motion for compassionate release is denied.

## BACKGROUND

　　　On April 3, 2019, Chavez-Benitez pleaded guilty to conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 846. Docket 59 at 2; Docket 65. On August 26, 2019, the court sentenced Chavez-Benitez to 151 months in custody and five years of supervised release for that offense. Docket 97 at 2–3. Chavez-Benitez's projected release date is May 26, 2029. *See Find an Inmate*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Jan. 8, 2024) (enter BOP register number 77444-097).

Chavez-Benitez is incarcerated at United States Penitentiary, Atlanta (USP Atlanta), a low security penitentiary with a detention center. *See id.*; *USP Atlanta*, Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/atl/ (last visited Jan. 8, 2024). The total population at USP Atlanta is 1,794 persons. *Id.* Chavez-Benitez filed a request for compassionate release with Department of Corrections staff on May 5, 2023. Docket 117-1 at 2–3. The record contains no evidence that the warden of USP Atlanta responded to Chavez-Benitez's request. *See generally* 117-1; 118. On May 31, 2023, Chavez-Benitez filed a motion for reduction in sentence. Docket 117 at 13.

## DISCUSSION

Because sentences are final judgments, a court ordinarily "may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C § 3582(c). One narrow exception is the First Step Act (FSA), passed by Congress in 2018. Pub. L. No. 115-391, 132 Stat. 5194 (2018). In pertinent part, the FSA amends 18 U.S.C. § 3582(c)(1)(A) to permit incarcerated defendants in certain circumstances to file motions with the court seeking compassionate release. *Id.* Compassionate release allows defendants with "extraordinary and compelling reasons" to leave prison early. 18 U.S.C. § 3582(c)(1)(A)(i). Such a reduction in sentence must consider the Section § 3553(a) sentencing factors and be consistent with applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A). The burden to establish that a sentence reduction is warranted under 18

U.S.C. § 3582(c) rests with the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

The Sentencing Commission's policy statement on compassionate release requires "extraordinary and compelling reasons" to warrant a sentence reduction and that the defendant not pose a danger to the public. U.S.S.G. § 1B1.13(a)–(b). The policy statement was amended on November 1, 2023, to reflect the FSA's empowerment of federal courts to adjudicate defendant-initiated motions for compassionate release. U.S.S.G. § 1B.13, amend. 814. Amendment 814 to the Sentencing Commission policy statement also expands the list of extraordinary and compelling reasons justifying compassionate release from federal detention. *See id.; 2023 Amendments in Brief*, U.S. Sent'g Comm'n, https://www.ussc.gov/sites/default/files/pdf/amendment-process/amendments-in-brief/AIB_814.pdf (last visited Jan. 8, 2024).

**I.  Administrative Exhaustion**

Before the FSA's passage, only the BOP Director had the authority to bring a compassionate release motion on a defendant's behalf. *See* 18 U.S.C. § 3582(c)(1)(A) (2002), *amended by* 18 U.S.C. § 3582(c)(1)(A) (2018). With the enactment of the FSA, Congress has permitted courts to grant a motion for a reduction in sentence filed by a defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Chavez-Benitez submitted a compassionate release request to staff at USP Atlanta on May 5, 2023. Docket 117-1 at 2–3. There is no evidence in the record that the warden of USP Atlanta ever received or denied the request. The record likewise does not indicate that Chavez-Benitez exhausted his administrative remedies by appealing a denial by the warden. But the government has not raised either issue, and has thus waived the argument that Chavez-Benitez failed to exhaust his remedies within the Bureau of Prisons. *See United States v. Houck*, 2 F.4th 1082, 1084 (8th Cir. 2021) (characterizing 18 U.S.C. § 3582(c)(1)(A)'s procedural requirements as "mandatory claim-processing rule[s]" that "must be enforced *so long as the opposing party properly raises it.*" (emphasis added)). Thus, the court will review Chavez-Benitez's motion on the merits.

## II.   Extraordinary and Compelling Reasons

Congress directed the Sentencing Commission to describe what "should be considered extraordinary and compelling reasons" for compassionate release and fashion "the criteria to be applied and a list of specific examples." *See* 28 U.S.C. § 994(t). The Sentencing Commission policy statement, as amended in November of 2023, responded by identifying six categories of "extraordinary and compelling reasons" justifying compassionate release. U.S.S.G. § 1B1.13(b)(1)–(4), amend. 814. The first four categories pertain to a defendant's: (1) medical circumstances; (2) advanced age and deteriorating health in combination with the amount of time served; (3) compelling family circumstances; and (4) victimization by correctional staff while in custody. *Id.* A fifth catch-all category exists for a "circumstance or combination of

4

circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." U.S.S.G. § 1B1.13(b)(5). The sixth category arises if the defendant has received an usually long sentence, served at least 10 years, and a change in law produces a gross disparity between the sentence being served and the sentences likely to imposed at the time the motion was filed, after considering the individual circumstances of the defendant. U.S.S.G. § 1B1.13(b)(6).

Rehabilitation of the defendant is not an extraordinary and compelling reason in and of itself but "may be considered in combination with other circumstances in determining whether and to what extent a reduction" in sentence is warranted. U.S.S.G. § 1B1.13(d). An extraordinary and compelling reason need not be unforeseen at the time of sentencing to warrant compassionate release. U.S.S.G. § 1B1.13(e).

The court has detailed the governing law and the analysis it uses when confronted with a compassionate release motion in many previous orders predating amendment 814 of Section 1B1.13. *E.g.*, *United States v. Shields*, 3:07-CR-30106-01, 2021 WL 765001, at *2-3 (D.S.D. Feb. 26, 2021); *United States v. Muhs*, 4:19-CR-40023-02, 2021 WL 534517, at *2-3 (D.S.D. Feb. 12, 2021); *United States v. Adame*, 4:18-CR-40117-05, 2020 WL 7212096, at *2-3 (D.S.D. Dec. 7, 2020); *United States v. Nyuon*, 4:12-CR-40017-01, 2020 WL 7029873, at *2-3 (D.S.D. Nov. 30, 2020). Amendment 814 retained much of the language from the prior version of the Sentencing Commission's policy

statement, and our prior cases inform our judgement to the extent they are consistent with the current version of the policy statement. *See* U.S.S.G. § 1B.13, amend. 814. Previous to Amendment 814, the court assumed that the factors laid out in the Policy Commission's policy statement applied to motions for compassionate release brought by prisoners as well as the Director of the Bureau of Prisons. *See, e.g.*, *Muhs*, 2021 WL 534517, at *3. Following Amendment 814, the factors courts are to consider now explicitly apply to motions for compassionate release brought by prisoners. *See id.*; U.S.S.G. § 1B.13(a).

The court analyzes Chavez-Benitez's argument under the catch-all provision, U.S.S.G. § 1B1.13(b)(5), and the provision for extraordinary and compelling reasons based on an unusually long sentence where there has been a change in law, U.S.S.G. § 1B1.13(b)(6). The court does not consider Chavez-Benitez's medical circumstances, age, family circumstances, or victimization by correctional staff, because Chavez-Benitez does not argue that any of those extraordinary and compelling reasons exist, and the record does not indicate that they are applicable to his case. *See* U.S.S.G. § 1B1.13(b)(1)–(4).

Chavez-Benitez argues that compassionate release is warranted because "the District Court issued [him] an incorrect statutory penalty[.]" Docket 117 at 5–6. He contends that the indictment in his case "failed to state a specific drug quantity [of methamphetamine] that is personally attributed to him" and thus was "insufficient for him to receive the statutory mandatory minimum of 10 years" associated with the crime of conspiracy to distribute 500 grams or more of methamphetamine. *See id.* at 7. Chavez-Benitez cites *United States v.*

6

*Gonzalez* in support of the proposition that where the indictment alleges a drug quantity as part of the conspiracy charge, the indictment must include a drug quantity "personally associated with or attributed to him" in order to sustain a conviction. *See id.* at 7-8 (citing *United States v. Gonzalez*, 686 F.3d 122 (2d Cir. 2012)). Chavez-Benitez also argues that because the indictment did not allege a drug quantity "personally attributed" to him, the disparity between the penalty he received and the penalty he would receive today renders his sentence unjust and excessive. *Id.* at 6. He moves for a reduced sentence of 78 to 97 months of imprisonment. *Id.* at 13.

      Chavez-Benitez is incorrect that the government is required to allege in the indictment a drug quantity "personally associated or attributed to [the defendant]." *Id.* at 7. Generally, "any fact, other than a prior conviction, that 'increases the penalty for a crime beyond the prescribed statutory maximum' must be included in the indictment and proven to the jury beyond a reasonable doubt.' " *United States v. Hernandez*, 299 F.3d 984, 992 (8th Cir. 2002) (quoting *Apprendi v. New* Jersey, 530 U.S. 466, 490 (2000)). As such, an indictment charging conspiracy to distribute a controlled substance must include the quantity range relevant to the statutory maximum for that offense, in order for the defendant to be convicted on that statutory maximum. *Id.* But in making a quantity finding on such charges, the finder of fact must consider not only quantities the defendant "possessed for personal use or distribution," but also quantities fellow conspirators agreed to distribute that were "reasonably foreseeable" to the defendant. *United States v. Brown*, 560 F.3d 754, 768-69 (8th Cir. 2009). In other words, the grand jury is not limited to

7

charging and the finder of fact is not limited to considering drug quantities the defendant possessed or even had concrete knowledge of, so long as those quantities were within the conspiracy and reasonably foreseeable to the defendant. *See id.*

Chavez-Benitez's reliance on the Second Circuit's decision in *Gonzalez* is misplaced for the same reason. In that case, the indictment entirely failed to allege drug quantity. *See Gonzalez*, 686 F.3d at 132. Here, the indictment properly alleged that the conspiracy to distribute involved 500 grams or more of methamphetamine. *See* Docket 1.

Moreover, Chavez-Benitez's statement of factual basis and Pre-Sentence Report (PSR) show that even if the finder of fact were required to consider only drug quantities "personally attributed" to Chavez-Benitez, it could have easily found that Chavez-Benitez personally possessed and distributed over 500 grams of methamphetamine. *See* Docket 60 at 1–2. In his factual basis statement, Chavez-Benitez admitted that as part of the conspiracy, he "personally distributed over 500 grams of a mixture or substance containing methamphetamine to others in the Aberdeen and Sioux Falls areas of South Dakota." *Id.* According to the PSR, Bradley Thayer told law enforcement that Chavez-Benitez handed Thayer a box containing 5 pounds, or approximately 2,268 grams, of methamphetamine. Docket 86 at 6. Landon Quenzer said that he obtained quantities of methamphetamine ranging from one ounce to seven kilograms from Chavez Benitez over no less than ten transactions. *See id.* at 6–7. Quenzer's statement corroborates that Chavez-Benitez distributed five

8

pounds of methamphetamine to Thayer. *See id.* at 7. Roy Blakey also stated that he received a kilogram of methamphetamine from Chavez-Benitez. *Id.*

Because Chavez-Benitez was not sentenced to an incorrect statutory penalty, no extraordinary or compelling reason for compassionate release exists under the § 1B1.13(b)(5) catch-all provision. For the same reason, no extraordinary or compelling reason exists under § 1B.13(b)(6) due to a disparity in sentence where there has been a change in law. Chavez-Benitez also does not allege that any change of law occurred in the interim between his sentencing and motion for compassionate release, and § 1B1.13(b)(6) does not apply for that reason as well. *See* 18 U.S.C. § 1B1.13(b)(6). Thus, no extraordinary and compelling reason for compassionate release exists.

### III.  Sentencing Factors of § 3553(a)

The § 3553(a) sentencing factors confirm that compassionate release is not warranted. The first factor the court considers is "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). By all accounts, Chavez-Benitez was involved in a conspiracy to distribute very large quantities of methamphetamine. *See* Docket 86 at 3–8. As noted in the PSR, Chavez-Benitez is implicated in many sizeable transactions involving the drug. *Id.* Chavez-Benitez was found responsible for 86,648 kilograms of converted drug weight. *Id.* at 8. Thus, the large scale of this conspiracy in both absolute and relative terms weighs heavily against release.

Chavez-Benitez's personal characteristics do not weigh strongly for or against his motion for compassionate release. Chavez-Benitez's criminal

9

history score was 2, reflecting charges ranging from multiple counts of driving with a suspended or revoked license, to domestic abuse, simple assault, and intentionally causing bodily injury. *Id.* at 9–11. Chavez-Benitez was born in Mexico, where he reported that growing up was "hard." *Id.* at 13. He has a tenth-grade education. *Id.* at 14. Chavez-Benitez entered the United States unlawfully at the age of seventeen. *Id.* at 13. While the defendant was a regular drug user, *id.* at 14, he claims he never used drugs around his wife and children and would do anything to support them. *Id.* at 13. Defendant has been employed as a painter, laborer, and maintenance worker at various points. *Id.* at 15.

The next factor the court considers is the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense[.]" 18 U.S.C. § 3553(a)(2)(A). While Chavez-Benitez has a limited criminal history, the seriousness of the offense demands a sentence that reflects its gravity. Granting compassionate release at this time would not promote respect for the law or provide just punishment. The PSR outlines numerous instances showing that Chavez-Benitez was deeply involved in a very large methamphetamine distribution conspiracy. *See* Docket 68 at 3–8. Thus, the court's interest in just punishment demands that Chavez-Benitez's sentence reflect the gravity of his offense.

The remaining § 3553(a) factors also do not support a sentence reduction. If the court were to grant compassionate release, similar conduct in others would not be deterred because Chavez-Benitez's punishment would not be severe enough to act as an effective deterrent. *See* 18 U.S.C. § 3553(a)(2)(B).

10

Moreover, reducing Chavez-Benitez's sentence at this time would not protect the public from further crimes if Chavez-Benitez resumed his criminal enterprise. *See* 18 U.S.C. § 3553(a)(2)(C). The court finds that the § 3553(a) factors weigh against the defendant and confirm that early release from custody is not warranted.

The court sentenced Chavez-Benitez to 151 months in custody and five years of supervised release. Docket 97 at 2. This is on the low end of the calculated guideline range of 151 to 188 months. *See* Docket 97-1 at 1. After careful consideration, the court concludes that Chavez-Benitez's sentence of 151 months continues to be appropriate for the seriousness of the crime to which he was found guilty.

## CONCLUSION

Chavez-Benitez has failed to satisfy the extraordinary and compelling reason standard. Thus, it is

ORDERED that the defendant's motion for relief under the First Step Act (Docket 117) is denied.

Dated January 8, 2024

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE

11